PROSKAUER ROSE LLP  
Michael T. Mervis  
Chantel L. Febus  
Alyse F. Stach  
Eleven Times Square  
New York, New York 10036-8299  
Telephone: (212) 969-3000  
Facsimile: (212) 969-2900  
mmervis@proskauer.com  
cfebus@proskauer.com  
astach@proskauer.com  

PROSKAUER ROSE LLP  
Mark K. Thomas  
70 West Madison, Suite 3800  
Chicago, Illinois 60602-4342  
Telephone: (312) 962-3550  
Facsimile: (312) 962-3551  
mthomas@proskauer.com  

-and-

PROSKAUER ROSE LLP  
Peter J. Young  
2049 Century Park East, 32nd Floor  
Los Angeles, California 90067-3206  
Telephone: (310) 557-2900  
Facsimile: (310) 557-2193  
pyoung@proskauer.com  

*Counsel for Sycamore Partners Management, L.P.  
and certain of its affiliates*

**UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| NINE WEST HOLDINGS, INC., *et al.*,[1] | ) Case No. 18-10947 (SCC) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**RESPONSE AND LIMITED OBJECTION OF SYCAMORE PARTNERS MANAGEMENT, L.P. AND CERTAIN OF ITS AFFILIATES TO MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY CODE SECTION 105 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004, 9006, AND 9016 AUTHORIZING EXPEDITED <u>DISCOVERY OF THE DEBTORS AND THIRD PARTIES</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Nine West Holdings, Inc. (7645); Jasper Parent LLC (4157); Nine West Management Service LLC (4508); Kasper Group LLC (7906); Kasper U.S. Blocker LLC (2390); Nine West Apparel Holdings LLC (3348); Nine West Development LLC (2089); Nine West Distribution LLC (3029); Nine West Jeanswear Holding LLC (7263); One Jeanswear Group Inc. (0179); and US KIC Top Hat LLC (3076). The location of the Debtors' service address is: 1411 Broadway, New York, New York 10018.

98833412v5

Sycamore Partners Management, L.P. and certain of its affiliates (collectively, "Sycamore") respectfully submit this response and limited objection to the motion (the "Motion") of the Official Committee of Unsecured Creditors (the "Committee") for the entry of an order authorizing expedited discovery of the above-captioned debtors (collectively, the "Debtors") and third parties, including Sycamore [ECF No. 319] and, in support thereof, respectfully state as follows:[2]

**Preliminary Statement**

1. The Committee seeks discovery from Sycamore on *83* categories of documents in furtherance of an investigation into whether a transaction that was publicly announced in December 2013 and closed on April 8, 2014 (nearly *four years* before this case was filed) is avoidable and might give rise to Claims. Sycamore – which is cast in the Motion as the principal target of the Committee's investigation – submits this response and limited objection to the Motion in order to (a) correct certain misstatements and omissions by the Committee in its description of the transactions at issue and (b) object to the timeline for the substantial completion of document production requested in the Committee's proposed order. On the former point, the Committee (i) mischaracterizes material aspects of the 2014 LBO and Carve-Out Transactions (collectively, the "April 2014 Transaction") and (ii) without any explanation, fails to seek authorization to pursue discovery from debtholders that participated in, and were enriched by, the April 2014 Transaction and that would be liable if the April 2014 Transaction could be avoided. On the latter point, Sycamore does not object to providing discovery (subject to a normal meet and confer process that Sycamore has already asked the Committee to start) and

---

[2] Capitalized terms used but not defined herein have the meaning given to them in the Motion.

1

intends to produce documents to the Committee in an expedited manner. However, the June 18 deadline sought by the Committee for document production to be "substantially complete" simply is not reasonable and, respectfully, it should not be ordered by this Court.

### Response and Limited Objection

A.  **The April 2014 Transaction.**

2.  In its Motion, the Committee attempts to portray the April 2014 Transaction as some sort of illicit asset-stripping scheme. As detailed below, however, that portrayal is premised on a serious mischaracterization of the April 2014 Transaction, every material aspect of which was disclosed publicly and conducted in the light of day. And, although the Committee says that it seeks to investigate potential Claims against "parties that approved of or were enriched by the 2014 LBO and Carve-Out Transactions" (Motion at ¶ 2) so that it may negotiate and resolve "intra-creditor issues" on behalf of "all unsecured creditors" (*id.*), the Motion does *not* seek discovery from debtholders that "approved of or were enriched by" the April 2014 Transaction, some of whose trustees or agents are, tellingly, Committee members.

3.  Although the Committee acknowledges in a footnote that "the LBO and Carve-Out Transactions were directly connected steps of an integrated transaction" (Motion at n. 1), its description of the April 2014 Transaction treats the 2014 LBO and the Carve-Out Transactions as distinct events. The Committee does this in order to support a narrative that Sycamore "stripped the Debtors of the Carve-Out Assets" in "self-dealing transactions" (Motion at ¶ 16), "potentially causing or hastening the insolvency of some or all of the Debtors." *Id.* at ¶ 26. That simply is not so.

2

98833412v5

4.     The substance (as opposed to the form) of the April 2014 Transaction was relatively simple. Sycamore agreed to acquire all of the businesses operated by The Jones Group Inc. ("JGI"), a publicly-held corporation, as four separate and distinct legal and corporate entities. As was disclosed in JGI's December 2013 proxy statement, those four businesses were Debtor Nine West Holdings, Inc. ("RemainCo") (which would own JGI's footwear and denim brands) and non-debtors Stuart Weitzman, Kurt Geiger and Jones Apparel (the so-called "Carve-Out" entities). The portion of the total purchase consideration that was allocated to RemainCo was financed by a $445 million secured term loan ("Secured Term Loan"), a $300 million unsecured term loan ("Unsecured Term Loan"), an exchange of hundreds of millions of dollars of then-outstanding notes due 2019 for new notes due 2019 (collectively, the "2019 Notes") and a $120 million equity contribution by Sycamore. The offering memoranda for the Term Loans and for the exchange of 2019 Notes fully disclosed that: (a) each of RemainCo and the Carve-Out entities would be purchased by Sycamore for four distinct, pre-negotiated and pre-approved purchase prices; (b) RemainCo and the Carve-Out entities would, as a result of the April 2014 Transaction, be separate and distinct legal entities; (c) each of RemainCo and the Carve-Out entities would have separate and distinct corporate structures, capital structures, assets and liabilities; (d) each of RemainCo and the Carve-Out entities would have different lending structures; (e) each of RemainCo and the Carve-Out entities would receive a different equity investment from Sycamore; and (f) the Secured Term Loan lenders, the Unsecured Term Loan lenders and holders of 2019 Notes would have recourse solely against the Debtors, and the three Carve-Out entities would not be obligated for the Debtors' liabilities.

5.     Accordingly, the Debtors' Secured Term Loan lenders, Unsecured Term Loan lenders and holders of new 2019 Notes actively participated in and approved the April 2014

3

Transaction whereby Sycamore purchased the Debtors and the three Carve-Out entities from JGI.

6. The contemporaneous direct and circumstantial evidence establishes that the Debtors were solvent and adequately capitalized after the April 2014 Transaction was completed. *First*, sophisticated, fully-informed institutional investors funded not only the original Secured Term Loan (which was oversubscribed by $45 million), but the market's demand to fund the April 2014 Transaction was so great that it prompted the offering of an additional $300 million in debt financing in the form of the Unsecured Term Loan, which itself was fully subscribed. Sophisticated players in the debt markets also elected to take new, higher interest rate 2019 Notes instead of taking payment in full in cash at the offered price of 101% of the principal amount of the original 2019 Notes, and purchased an additional $60 million of 2019 Notes shortly after the April 2014 Transaction closed.

7. *Second*, Sycamore contributed $120 million of its own equity towards the purchase price for the RemainCo business. Obviously, this is not something a private equity firm would do if it believed the business would be left insolvent or inadequately capitalized. Sycamore's equity investment also rebuts the Committee's allegation that Sycamore "formulated and utilized" inaccurate historical and projected financial information to "procure the LBO debt and the solvency opinion" (Motion at ¶ 14), since that information also "procured" a $120 million equity investment by Sycamore.

8. *Third*, the Debtors continued in business after the April 2014 Transaction for nearly *four years* before they filed this case. It is difficult to imagine how the company could

continue as a going concern for such a long period of time if the April 2014 Transaction had left it insolvent or inadequately capitalized.

9. *Fourth*, contemporaneous solvency and capital adequacy analyses prepared by an independent third-party expert using projections that were conservative in comparison to those of many competitors at the time also support the conclusion that the Debtors were solvent and adequately capitalized following the completion of the April 2014 Transaction. Although the Committee notes that the Debtors missed those projections going forward, the evidence will show that the causes of the Debtors' revenue declines were not – and could not have been – reasonably anticipated at the time of the April 2014 Transaction.

10. *Fifth*, the Debtors made nearly $400 million in debt service payments after the April 2014 Transaction, defaulting for the first time *in April 2018*, upon the commencement of these cases.[3]

11. To put it mildly, these are hardly the hallmarks of a business that was left insolvent or inadequately capitalized by the April 2014 Transaction.

12. Now, over four years and hundreds of millions of debt service payments later, the Committee says that it seeks discovery of parties who "approved of" or were "enriched by" the April 2014 Transaction, but its Motion seeks *no* discovery from debtholders who knowingly approved and facilitated the Transaction and received hundreds of millions in debt service payments without ever seeking to avoid it, but are represented on the Committee. Other Committee members purchased debt at deep discounts to par long after the April 2014

---

[3] Notably, the Secured Term Loan lenders received approximately $97 million, the Unsecured Term Loan lenders received approximately $72 million and holders of the 2019 Notes received approximately $128 million.

5

Transaction was completed and it was clear that the Debtors were not achieving pre-Transaction projections. Such parties should not *now* be able to complain that the 2014 Transaction should be avoided.

13. In short, what discovery in this case will show is that the April 2014 Transaction is not avoidable as a matter of law or equity. If, however, the Transaction were avoidable, then claims exist against the holders of the Debtors' debt, including a claim to avoid the entirety of the Debtors' obligations under the Secured Term Loan, Unsecured Term Loan and 2019 Notes, a claim to subordinate all claims of the holders of that debt and a claim to recover the nearly $300 million in debt service payments that such holders received from the Debtors between the closing of the April 2014 Transaction and the filing of this case and to disallow the debtholders' claims until the disallowed debt service payments are repaid. In other words, if an estate fiduciary concludes that the April 2014 Transaction is avoidable and that claims exist against Sycamore and its co-investor KKR, then that fiduciary also must necessarily conclude that claims exist against the holders of the Debtors' debt, including those who serve or have agents on the Committee.

**B.     The Court Should Not Approve the Committee's Request for a June 18 Deadline for the Substantial Completion of Document Production.**

14. Notwithstanding its firm conviction that there is no basis upon which to avoid the April 2014 Transaction, Sycamore does not contest that discovery is appropriate here. Sycamore is willing to cooperate with the Committee's investigation and will use its best efforts to provide discovery to the Committee as promptly as possible so that the relevant contemporaneous direct and circumstantial evidence can be evaluated by the Committee. To that end, Sycamore has

6

already been in communication with the Committee's counsel to schedule an initial "meet and confer" discussion.

15. That said, the discovery sought by the Committee across its 83 separate document requests is exceedingly broad. Thus, although Sycamore expects to make prompt and rolling productions of responsive documents (subject to refinement of the Committee's requests through the meet and confer process and any appropriate objections to the requests), June 18 simply is too soon for the substantial completion of Sycamore's production. Accordingly, Sycamore objects to the June 18 deadline in the proposed order accompanying the Motion and instead urges the Court to adopt language requiring reasonable diligence and speed with regard to the production of documents.

Dated: June 4, 2018
New York, New York

Respectfully submitted,

*/s/ Michael T. Mervis*

PROSKAUER ROSE LLP
Michael T. Mervis
Chantel L. Febus
Alyse F. Stach
Eleven Times Square
New York, New York 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
mmervis@proskauer.com
cfebus@proskauer.com
astach@proskauer.com

-and-

PROSKAUER ROSE LLP
Mark K. Thomas
70 West Madison, Suite 3800
Chicago, Illinois 60602-4342
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

7

mthomas@proskauer.com

-and-

PROSKAUER ROSE LLP
Peter J. Young
2049 Century Park East, 32nd Floor
Los Angeles, California 90067-3206
Telephone: (310) 557-2900
Facsimile: (310) 557-2193
pyoung@proskauer.com

*Counsel for Sycamore Partners Management, L.P. and certain of its affiliates*

8

98833412v5